**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DOGWOOD STATE BANK**<br>**5401 SIX FORKS ROAD**<br>**RALEIGH, NC 27609**<br><br>**Plaintiff,**<br>**v.**<br><br>**MACC ENTERPRISES, LLC**<br>**DBA DICKEY'S BBQ**<br>**1351 WESTERN AVE**<br>**CHILLICOTHE, OH 45601**<br><br>**ALSO SERVE AT:**<br>**C/O MICHAEL BOWER, STATUTORY AGENT**<br>**2595 PATTON HILL ROAD**<br>**CHILLICOTHE, OH 45601**<br><br>**AND**<br><br>**SUSAN M. BOWER**<br>**2595 PATTON HILL ROAD**<br>**CHILLICOTHE, OH 45601**<br><br>**AND**<br><br>**MICHAEL S. BOWER**<br>**AKA M. SHAWN BOWER**<br>**2595 PATTON HILL ROAD**<br>**CHILLICOTHE, OH 45601**<br><br>**AND**<br><br>**BCA CAPITAL PARTNERS LLC**<br>**100 OCEANSIDE DRIVE**<br>**NASHVILLE, TN 37204**<br><br>**AND** | : | **Civil Action No. 2:26-cv-00031**<br><br>**Judge Edmund A. Sargus, Jr.**<br><br>**Magistrate Judge Chelsey M. Vascura**<br><br>**AMENDED COMPLAINT FOR MONEY JUDGMENT ON COMMERCIAL PROMISSORY NOTES AND GUARANTIES AND FOR ENFORCEMENT OF RIGHTS UNDER COMMERCIAL SECURITY AGREEMENTS** |

| | |
|---|---|
| **HEADWAY CAPITAL LLC**<br>**175 WEST JACKSON BLVD, SUITE 1000**<br>**CHICAGO, IL 60604**<br><br>**AND**<br><br>**EBF HOLDINGS, LLC D/B/A EVEREST BUSINESS FUNDING**<br>**C/O NORTHWEST REGISTERED AGENT SERVICE, INC., STATUTORY AGENT**<br>**6545 MARKET AVENUE N, SUITE 100**<br>**CANTON, OH 44721**<br><br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## I. BACKGROUND AND JURISDICTION

1. Now comes Plaintiff, Dogwood State Bank ("Dogwood" or "Plaintiff"), and says it is a state-chartered community bank having its principal place of business located at 5401 Six Forks Road, Raleigh, NC 27609.

2. Defendant MACC Enterprises, LLC, doing business as Dickey's BBQ ("MACC"), is an Ohio limited liability company with a principal place of business in Ross County, Ohio, and all the members of MACC are residents of the State of Ohio.

3. Defendants Susan M. Bower ("Mrs. Bower") and Michael S. Bower, aka M. Shawn Bower ("Mr. Bower"), are individuals residing in Ross County, Ohio.

4. The individual Defendants, Mr. Bower and Mrs. Bower, are not currently members of the military service of the United States of America, as reflected in the attached "**Exhibit A**."

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and the Defendants are citizens of different states, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), excluding interest and costs.

## II. <u>COUNT ONE – CLAIM FOR MONEY JUDGMENT ON PROMISSORY NOTE 1</u>

13. Plaintiff incorporates the allegations of the preceding paragraphs by reference herein as if fully restated.

14. On or about November 30, 2020, Defendant MACC executed in favor of Plaintiff a certain commercial *U.S. Small Business Administration Note*, in writing, in the original principal amount of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) ("Note 1"). A true and accurate copy of Note 1 is attached hereto and incorporated herein as "**Exhibit B**."

15. Defendant MACC defaulted under the terms of Note 1 by failing to make payments when due under Note 1.

16. Plaintiff is the holder of Note 1 and in possession of Note 1, has fulfilled all conditions precedent, has accelerated Note 1, and has elected to demand payment of all the indebtedness to be immediately due and payable.

17. Defendant MACC has failed to pay the sums owing on Note 1. Plaintiff is seeking judgment for the amount due, which was, as of December 16, 2025, Twenty Thousand Seven Hundred Sixty-Nine Dollars and Seventeen Cents ($20,769.17), together with interested thereafter, at a variable rate as specified in Note 1 as the Wall Street Journal Prime Rate + 2.75%, resulting in a current rate of 9.75% per annum plus late charges, and such other amounts as due as provided in Note 1.

## III. <u>COUNT TWO – CLAIM FOR MONEY JUDGMENT ON NOTE 1 GUARANTIES</u>

18. Plaintiff incorporates the allegations of the preceding paragraphs by reference herein as if fully restated.

19. In order to secure Note 1, on or about November 30, 2020, Defendants Mr. Bower and Mrs. Bower each executed and delivered to Plaintiff a certain *U.S. Small Business*

*Administration Unconditional Guarantee* (collectively hereinafter the "Note 1 Guaranties"), thereby guaranteeing payment of all indebtedness owed from Defendant MACC pursuant to Note 1. True and accurate copies of the Note 1 Guaranties are attached hereto and incorporated herein as "**Exhibit C**."

20. By virtue of the default by Defendant MACC on Note 1, Plaintiff is entitled to declare default under the terms of the Note 1 Guaranties.

21. Plaintiff is the holder and is in possession of the Note 1 Guaranties, has fulfilled all conditions precedent, has accelerated the Note 1 Guaranties, and has elected to demand payment of all the indebtedness on the Note 1 Guaranties to be immediately due and payable.

22. Defendants MACC, Mr. Bower, and Mrs. Bower have failed to pay the sums owing on Note 1 and the Note 1 Guaranties, and Plaintiff is seeking judgment on the Note 1 Guaranties for the amounts owing under Note 1, which was, as of December 16, 2025, Twenty Thousand Seven Hundred Sixty-Nine Dollars and Seventeen Cents ($20,769.17), together with interested thereafter, at a variable rate as specified in Note 1 as the Wall Street Journal Prime Rate + 2.75%, resulting in a current rate of 9.75% per annum plus late charges, and such other amounts as due as provided in Note 1.

## IV. COUNT THREE – CLAIM FOR MONEY JUDGMENT ON PROMISSORY NOTE 2

23. Plaintiff incorporates the allegations of the preceding paragraphs by reference herein as if fully restated.

24. On or about November 30, 2020, Defendant MACC executed in favor of Plaintiff a certain commercial *U.S. Small Business Administration Note*, in writing, in the original principal amount of Seven Hundred Twenty Thousand Dollars and Zero Cents ($720,000.00) ("Note 2"). A true and accurate copy of Note 2 is attached hereto and incorporated herein as "**Exhibit D**."

25. Defendant MACC defaulted under the terms of Note 2 by failing to make payments when due under Note 2.

26. Plaintiff is the holder and in possession of Note 2, has fulfilled all conditions precedent, has accelerated Note 2, and elected to demand payment of all the indebtedness to be immediately due and payable.

27. Defendant MACC has failed to pay the sums owing on Note 2. Plaintiff is seeking judgment for the amount owning, which was, as of December 16, 2025, Five Hundred Twenty-Seven Thousand Six Hundred Sixty-Four Dollars and Thirty-Eight Cents ($527,664.38), together with interest thereafter, at a variable rate as specified in Note 2 of the Wall Street Journal Prime Rate plus 2.75%, resulting in a current rate of 9.75% per annum, plus late charges, and such other amounts as due as provided in Note 2, including Plaintiff's attorneys' fees and costs.

## V. COUNT FOUR – CLAIM FOR MONEY JUDGMENT ON THE NOTE 2 GUARANTIES

28. Plaintiff incorporates the allegations of the preceding paragraphs by reference herein as if fully restated.

29. In order to secure Note 2, on or about November 30, 2020, Defendants Mr. Bower and Mrs. Bower each executed and delivered to Plaintiff a certain *U.S. Small Business Administration Unconditional Guarantee* (collectively the "Note 2 Guaranties"), thereby guaranteeing payment of all indebtedness owing from Defendant MACC to Plaintiff pursuant to Note 2. True and accurate copies of the Note 2 Guaranties are attached hereto and incorporated herein as "**Exhibit E**."

30. By virtue of the default by Defendant MACC in the terms of Note 2, Plaintiff is entitled to declare default under the terms of the Note 2 Guaranties.

31. Plaintiff is the holder and in possession of the Note 2 Guaranties, has fulfilled all

conditions precedent, has accelerated the Guaranties, and has elected to demand payment of all the indebtedness to be immediately due and payable.

32. Defendants MACC, Mr. Bower, and Mrs. Bower have failed to pay the sums owing on Note 2 and the Note 2 Guaranties. Plaintiff is seeking judgment for the amount due, which was, as of December 16, 2025, Five Hundred Twenty-Seven Thousand Six Hundred Sixty-Four Dollars and Thirty-Eight Cents ($527,664.38), together with interest thereafter, at a variable rate as specified in Note 2 of the Wall Street Journal Prime Rate plus 2.75%, resulting in a current rate of 9.75% per annum, plus late charges, and such other amounts as due as provided in Note 2, including Plaintiff's attorneys' fees and costs.

## VI. COUNT FIVE – CLAIM FOR ENFORCEMENT OF RIGHTS UNDER SECURITY AGREEMENTS[1]

33. Plaintiff incorporates the allegations of the preceding paragraphs by reference herein as if fully restated.

34. To further secure Note 1, on or about November 30, 2020, Defendant MACC executed and delivered to Plaintiff a certain commercial *U.S. Small Business Administration Security Agreement* ("Note 1 Security Agreement"), thereby granting Plaintiff a first and best lien interest in the personal property more fully described in the Note 1 Security Agreement ("Note 1 Personal Property").

35. To further secure Note 2, on or about November 30, 2020, Defendant MACC executed and delivered to Plaintiff a certain commercial *U.S. Small Business Administration Security Agreement* ("Note 2 Security Agreement"), thereby granting Plaintiff a first and best lien interest in the personal property more fully described in the Note 2 Security Agreement ("Note 2 Personal Property") (the Note 1 Security Agreement and Note 2 Security Agreement are

[1] This Complaint is being amended to name the previously pseudonymous defendants under their true identities.

collectively hereinafter the "Security Agreements"). True and accurate copies of the Security Agreements are attached hereto and incorporated herein as "**Exhibit F**."

36. Plaintiff is the holder of the Security Agreements and has perfected its rights as a secured party, with first and best priority in the Note 1 Personal Property and Note 2 Personal Property as described in the Security Agreements, by filing Uniform Commercial Code Financing Statements with the Ohio Secretary of State, true and accurate copies of which are attached hereto and incorporated herein as "**Exhibit G**."

37. Defendant MACC is in default of the terms of the Security Agreements by virtue of its defaults under the terms of Note 1 and Note 2. Plaintiff is therefore entitled to exercise its rights under the Security Agreements and Ohio law, to take possession of and sell the Note 1 Personal Property and Note 2 Personal Property described in the Security Agreements in the manner prescribed by law.

38. Defendants BCA Capital Partners LLC, Headway Capital LLC, and EBF Holdings, LLC d/b/a Everest Business Funding may claim some interest in the Note 1 Personal Property or Note 2 Personal Property, by virtue of certain UCC Financing Statements filed of record with the Office of the Ohio Secretary of State, true and accurate copies of which are collectively attached hereto and incorporated herein as "**Exhibit H**", with such interests if any being junior and subordinate in priority to that of Plaintiff, and said Defendants should be required to appear and set forth its interest therein, if any, or forever be barred from asserting such interests.

**WHEREFORE,** Plaintiff respectfully prays for judgment as follows:

As to Counts I and II, joint and several money judgment against Defendants MACC Enterprises, LLC, Michael S. Bower aka M. Shawn Bower, and Susan M. Bower, for the amount owing on Note 1 and the Note 1 Guaranties, as of December 16, 2025, of Twenty Thousand Seven Hundred Sixty-Nine Dollars and Seventeen Cents ($20,769.17), together with interested thereafter, at a variable rate as specified in Note 1 as the Wall Street Journal Prime Rate + 2.75%, resulting in a current rate of 9.75% per annum plus late charges, and such other amounts as due as provided in Note 1; and

As to Counts III and IV, joint and several money judgment against Defendants MACC Enterprises, LLC, Michael S. Bower aka M. Shawn Bower, and Susan M. Bower, for the amount owing on Note 2 and the Note 2 Guaranties, as of December 16, 2025, of Five Hundred Twenty-Seven Thousand Six Hundred Sixty-Four Dollars and Thirty-Eight Cents ($527,664.38), together with interest thereafter, at a variable rate as specified in Note 2 of the Wall Street Journal Prime Rate + 2.75%, resulting in a current rate of 9.75% per annum, plus late charges, and such other amounts as due as provided in Note 2, including Plaintiff's attorneys' fees and costs; and

As to Count V, for a judgment in favor of Plaintiff authorizing: (a) Plaintiff to pursue its remedies available to it under the Security Agreements and under the laws of the state of Ohio, including but not limited to the right to take possession of and sell the personal property collateral described in the Security Agreements; and (b) third-parties in possession of Plaintiff's collateral under the Security Agreements, including but not limited to insurance carriers or brokers holding insurance commissions and dividends, to rely on the judgment for Count V to transfer Plaintiff's collateral under the Security Agreements to Plaintiff; and

For such other and further relief to which Plaintiff may be entitled in equity or at law.

Respectfully submitted,

*/s/ Jeffrey J. Madison*

Jeffrey J. Madison, Esq. (OH BAR#0080590)
Kendal C. Rossman, Esq. (OH BAR#0104651)
THE SUMMIT LAW GROUP LLC
815 Grandview Avenue, Suite 200
Columbus, OH 43215
Madison@tslgohio.com
(Tel) 614-960-0610
(Fax) 614-960-0621
*Attorneys for Plaintiff Dogwood State Bank*

Department of Defense Manpower Data Center

Results as of : Dec-04-2025 04:17:38 PM EST

SCRA 5.27

# Status Report
# Pursuant to Servicemembers Civil Relief Act

SSN: XXX-XX-6942
Birth Date: Jul-XX-1959
Last Name: BOWER
First Name: MICHAEL
Middle Name:
Status As Of: Dec-04-2025
Certificate ID: 5RK459RBK0JBK93

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

**EXHIBIT A**

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Dec-04-2025 04:18:20 PM EST

SCRA 5.27

# Status Report
# Pursuant to Servicemembers Civil Relief Act

SSN: XXX-XX-2557

Birth Date: Apr-XX-1959

Last Name: BOWER

First Name: SUSAN

Middle Name:

Status As Of: Dec-04-2025

Certificate ID: 4R36Q7L92KZTN8J

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

U.S. Small Business Administration

**NOTE**

| | |
|---|---|
| SBA Loan # | [redacted] |
| SBA Loan Name | **Dickey's Barbecue Pit** |
| Date | **November 30, 2020** |
| Loan Amount | **$25,000.00** |
| Interest Rate | **Prime plus 2.75%** |
| Borrower | **MACC ENTERPRISES, LLC** |
| Operating Company | **MACC ENTERPRISES, LLC** |
| Lender | **Dogwood State Bank** |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of **Twenty Five Thousand and No/100 Dollars ($25,000.00)** interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

[redacted]

**EXHIBIT B**

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

**NOTE TERMS:**

**Maturity:** This Note will mature in 10 years from date of Note.

**Repayment Terms:**

Borrower must make all payments at the place Lender designates. The payment terms for this Note are: During the first thirty-six (36) months the Express Loan will act as a revolving line of credit. After 36 months the existing loan balance will automatically term-out as a seven year term loan.

"When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law."

If Lender uses SBA Note, Form 147, Lender must insert into Note, to be executed by Borrower, the following terms, without modification. Lender must complete all blank terms on the Note at time of closing.

The interest rate on this Note will fluctuate. The initial interest rate is 6.00% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay a total of 36 payments of interest only on the disbursed principal balance beginning **one month** from the month this Note is dated and every month thereafter; payments must be made on the Fifteenth calendar day in the months they are due.

Borrower must pay principal and interest payments of $277.55 every month beginning Thirty Seventh month from the month this Note is dated; payments must be made on the fifteenth calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period"), beginning January 1, 2021 (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the **Wall Street Journal** newspaper) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**
Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from the date of this Note.

**Late Charge**: If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee of up to 4.00% of the unpaid portion of the regularly scheduled payment.

4. DEFAULT:
Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things,

the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did

not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

**BORROWER:**

MACC ENTERPRISES, LLC, an Ohio limited liability company

By: M Shawn Bower
Name: M. Shawn Bower
Title: Member

[redacted]

**U.S. Small Business Administration**

**UNCONDITIONAL GUARANTEE**

| | |
|---|---|
| SBA Loan # | [redacted] |
| SBA Loan Name | **Dickey's Barbecue Pit** |
| Guarantor | **M. Shawn Bower** |
| Borrower | **MACC ENTERPRISES, LLC** |
| Lender | **Dogwood State Bank** |
| Date | **November 30, 2020** |
| Note Amount | **$25,000.00** |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated of even date herewith, in the principal amount of **Twenty Five Thousand and No/100 Dollars ($25,000.00)** from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" mean the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

[redacted]

**EXHIBIT C**

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lien holder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law:

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

[redacted]

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

[redacted]

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written Terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

**GUARANTOR:**

M. Shawn Bower

**ATTEST/WITNESS:**

U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | [redacted] |
| SBA Loan Name | **Dickey's Barbecue Pit** |
| Guarantor | **Susan M. Bower** |
| Borrower | **MACC ENTERPRISES, LLC** |
| Lender | **Dogwood State Bank** |
| Date | **November 30, 2020** |
| Note Amount | **$25,000.00** |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated of even date herewith, in the principal amount of **Twenty Five Thousand and No/100 Dollars ($25,000.00)** from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" mean the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

[redacted]

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lien holder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law:

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written Terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

**GUARANTOR:**

Susan M. Bower

**ATTEST/WITNESS:**

[redacted]

U.S. Small Business Administration

**NOTE**

| | |
|---|---|
| SBA Loan # | [redacted] |
| SBA Loan Name | **Dickey's Barbecue Pit** |
| Date | **November 30, 2020** |
| Loan Amount | **$720,000.00** |
| Interest Rate | **Prime plus 2.75%** |
| Borrower | **MACC ENTERPRISES, LLC** |
| Operating Company | **MACC ENTERPRISES, LLC** |
| Lender | **Dogwood State Bank** |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of **Seven Hundred Twenty Thousand and No/100 Dollars ($720,000.00)** interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

[redacted]

**EXHIBIT D**

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

**NOTE TERMS:**

**Maturity:** This Note will mature in 124 months from date of initial disbursement.

**Repayment Terms:** The interest rate on this Note will fluctuate. The initial interest rate is 6.00% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay a total of 4 payments of interest only on the disbursed principal balance beginning one month from the month of initial disbursement on this Note and every month thereafter; payments must be made on the same day as the date of initial disbursement on this Note in the months they are due.

Borrower must pay principal and interest payments of $7,993.48 every month, beginning five months from the month of initial disbursement on this Note; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period") beginning January 1, 2021 (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is

no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**
Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 124 months from date of initial disbursement.

**Late Charge**: If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee of up to 4.00% of the unpaid portion of the regularly scheduled payment.

4. DEFAULT:
Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to

this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

NONE.

[redacted]

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

**BORROWER:**

MACC ENTERPRISES, LLC, an Ohio limited liability company

By: ______________________
Name: M. Shawn Bower
Title: Member

[redacted]

**U.S. Small Business Administration**

**UNCONDITIONAL GUARANTEE**

| | |
|---|---|
| SBA Loan # | [redacted] |
| SBA Loan Name | **Dickey's Barbecue Pit** |
| Guarantor | **M. Shawn Bower** |
| Borrower | **MACC ENTERPRISES, LLC** |
| Lender | **Dogwood State Bank** |
| Date | **November 30, 2020** |
| Note Amount | **$720,000.00** |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated of even date herewith, in the principal amount of **Seven Hundred Twenty Thousand and No/100 Dollars ($720,000.00)** from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" mean the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;



**EXHIBIT E**

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lien holder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law:

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

[redacted]

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written Terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

**GUARANTOR:**

M. Shawn Bower

**ATTEST/WITNESS:**

[redacted]

**U.S. Small Business Administration**

**UNCONDITIONAL GUARANTEE**

| | |
|---|---|
| SBA Loan # | [redacted] |
| SBA Loan Name | **Dickey's Barbecue Pit** |
| Guarantor | **Susan M. Bower** |
| Borrower | **MACC ENTERPRISES, LLC** |
| Lender | **Dogwood State Bank** |
| Date | **November 30, 2020** |
| Note Amount | **$720,000.00** |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated of even date herewith, in the principal amount of **Seven Hundred Twenty Thousand and No/100 Dollars ($720,000.00)** from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" mean the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lien holder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law:

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written Terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

**GUARANTOR:**

Susan M. Bower

**ATTEST/WITNESS:**

**U.S. Small Business Administration**

**SECURITY AGREEMENT**

1. **MACC ENTERPRISES, LLC** with an address at **1351 Western Avenue, Chillicothe, Ohio 45601** ("Debtor") for value received, hereby grants to Dogwood State Bank with an address at 10130 Mallard Creek Rd., Bldg 2, Suite 232, Charlotte, NC 28262 (hereinafter called "Secured Party"), a Security interest in the property described below (hereinafter collectively called "Collateral") to secure the payment of the principal and interest on and all obligations under a note (hereinafter called the "Note"), dated of even date herewith, of **MACC ENTERPRISES, LLC** payable to the order of Secured Party, in the principal amount of **Twenty Five Thousand and No/100 Dollars ($25,000.00)**, all renewals and extensions of the Note, and all costs, expenses, advances and liabilities which may be made or incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note and in the protection, maintenance and liquidation of the security interest hereby granted with interest at the maximum legal rate on such costs, expenses, advances and liabilities. The Note and all other obligations secured hereby are herein collectively called the "Liabilities."

2. The Collateral in which this security interest is granted is all of the Debtors' property described below in reference to which an "X" or checkmark has been placed in the box applicable thereto, together with all the proceeds and products therefrom. If two such boxes are so marked, the security interest so designated secures the purchase money from the loan used by the Debtor to acquire title to the Collateral.

☐ ☐ a. All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith; specifically including, without limitation, such equipment and machinery listed on the attached exhibit incorporated herein by reference.

☐ ☐ b. All passenger and commercial motor vehicles registered for use upon public highways or streets, now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts, equipment and tools belonging thereto or for use in connection therewith. Specifically, the vehicles on the attached pages.

☒ ☒ c. All inventory, raw materials, work in process and supplies now owned or hereafter acquired.

☒ ☒ d. All accounts receivable now outstanding or hereafter arising.

☐ ☐ e. All instruments, chattel paper, contract rights, and general intangibles now in force or hereafter acquired.

3. Debtor shall not transfer, sell or assign Debtors' interest in the Collateral nor permit any other security interest to be created thereon without Secured Party's prior written approval, except that Debtor may sell the inventory listed in Paragraph 2.c. hereof in the ordinary course of business on customary terms and at usual prices and may collect as Secured Party's agent sums due on accounts receivable and contract rights listed in Paragraphs 2.d. and 2.e. until advised otherwise by Secured Party.

[redacted]

**EXHIBIT F**

4. Debtor shall keep, store or regularly garage all Collateral at locations approved by Secured Party in writing.

5. Debtor shall not conduct business under any other name than that given above nor change or reorganize the type of business entity under which it does business except upon prior written approval of Secured Party. If such approval is given, Debtor guarantees that all documents, instruments and agreements demanded by Secured Party shall be prepared and filed at Debtors' expense before such change of name or business entity occurs.

6. Debtor shall pay the filing and recording costs of any documents or instruments necessary to perfect, extend, modify, or terminate the security interest created hereunder, as demanded by Secured Party.

7. Debtor shall maintain all Collateral in good condition, pay promptly all taxes, judgments, or changes of any kind levied or assessed thereon, keep current all rent due on premises where Collateral is located, and maintain insurance on all Collateral against such hazards, in such amounts and with such companies as Secured Party may demand, all such insurance policies to be in the possession of Secured Party and to contain a Lender's Loss Payable Clause naming Secured Party in a manner satisfactory to Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon, and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtors' name all proofs of loss, drafts, checks and any other documents necessary to accomplish such collections, and any persons or entities making payments to Secured Party under the terms of this Paragraph are hereby relieved absolutely from any obligation to see to the application of any sums so paid.

8. Debtor shall be in default hereunder if Debtor fails to perform any of the liabilities imposed hereby or any other obligation required by the various instruments or papers evidencing or securing this loan, or if the full balance of the loan becomes immediately payable under the terms of such instruments, either automatically or by declaration of the Secured Party. In the event of any default, Secured Party may, in its own discretion, cure such default and, if it does so, any expenditures made for such purpose shall be added to the principal of the Note.

9. In the event of default, Debtor shall assemble and make available all Collateral at any place designated by Secured Party. Debtor acknowledges being advised of a constitutional right to a court notice and hearing to determine whether, upon default, there is probable cause to sustain the validity of the Secured Party's claim and whether the Secured Party is entitled to possession of the Collateral and being so advised, Debtor hereby voluntarily gives up, waives and surrenders any right to a notice and hearing to determine whether there is probable cause to sustain the validity of Secured Party's claim. Any notices required pursuant to any state or local law shall be deemed reasonable if mailed by Secured Party to the persons entitled thereto at their last known addresses at least ten days prior to disposition of the Collateral, and, in reference to a private sale, need state only that Secured Party intends to negotiate such a sale. Disposition of Collateral shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the community where the Collateral is located or by a private sale for a sum equal to or in excess of the liquidation value of the Collateral as determined by Secured Party.

10. All rights conferred on Secured Party hereby are in addition to those granted to it by any state or local law or any other law. Failure or repeated failure to enforce any rights hereunder shall not constitute an estoppel or waiver of Secured Party's rights to exercise such rights accruing prior or subsequent thereto. Secured Party shall not be liable for any loss to Collateral in its possession,

nor shall such loss diminish the debt due, even if the loss is caused or contributed to by Secured Party's negligence.

11. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

    (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

    (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

    (c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

In witness whereof, the undersigned has executed this Security Agreement as of **November 30, 2020**.

**DEBTOR:**

MACC ENTERPRISES, LLC, an Ohio limited liability company

By: M. Shawn Bower

Name: M. Shawn Bower
Title: Member

[redacted]

**U.S. Small Business Administration**

**SECURITY AGREEMENT**

1. **MACC ENTERPRISES, LLC** with an address at **1351 Western Avenue, Chillicothe, Ohio 45601** ("Debtor") for value received, hereby grants to Dogwood State Bank with an address at 10130 Mallard Creek Rd., Bldg 2, Suite 232, Charlotte, NC 28262 (hereinafter called "Secured Party"), a Security interest in the property described below (hereinafter collectively called "Collateral") to secure the payment of the principal and interest on and all obligations under a note (hereinafter called the "Note"), dated of even date herewith, of **MACC ENTERPRISES, LLC** payable to the order of Secured Party, in the principal amount of **Seven Hundred Twenty Thousand and No/100 Dollars ($720,000.00)**, all renewals and extensions of the Note, and all costs, expenses, advances and liabilities which may be made or incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note and in the protection, maintenance and liquidation of the security interest hereby granted with interest at the maximum legal rate on such costs, expenses, advances and liabilities. The Note and all other obligations secured hereby are herein collectively called the "Liabilities."

2. The Collateral in which this security interest is granted is all of the Debtors' property described below in reference to which an "X" or checkmark has been placed in the box applicable thereto, together with all the proceeds and products therefrom. If two such boxes are so marked, the security interest so designated secures the purchase money from the loan used by the Debtor to acquire title to the Collateral.

   ☒ ☒ a. All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith; specifically including, without limitation, such equipment and machinery listed on the attached exhibit incorporated herein by reference.

   ☒ ☒ b. All passenger and commercial motor vehicles registered for use upon public highways or streets, now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts, equipment and tools belonging thereto or for use in connection therewith. Specifically, the vehicles on the attached pages.

   ☒ ☒ c. All inventory, raw materials, work in process and supplies now owned or hereafter acquired.

   ☒ ☒ d. All accounts receivable now outstanding or hereafter arising.

   ☒ ☒ e. All instruments, chattel paper, contract rights, and general intangibles now in force or hereafter acquired.

3. Debtor shall not transfer, sell or assign Debtors' interest in the Collateral nor permit any other security interest to be created thereon without Secured Party's prior written approval, except that Debtor may sell the inventory listed in Paragraph 2.c. hereof in the ordinary course of business on customary terms and at usual prices and may collect as Secured Party's agent sums due on accounts receivable and contract rights listed in Paragraphs 2.d. and 2.e. until advised otherwise by Secured Party.

[redacted]

4. Debtor shall keep, store or regularly garage all Collateral at locations approved by Secured Party in writing.

5. Debtor shall not conduct business under any other name than that given above nor change or reorganize the type of business entity under which it does business except upon prior written approval of Secured Party. If such approval is given, Debtor guarantees that all documents, instruments and agreements demanded by Secured Party shall be prepared and filed at Debtors' expense before such change of name or business entity occurs.

6. Debtor shall pay the filing and recording costs of any documents or instruments necessary to perfect, extend, modify, or terminate the security interest created hereunder, as demanded by Secured Party.

7. Debtor shall maintain all Collateral in good condition, pay promptly all taxes, judgments, or changes of any kind levied or assessed thereon, keep current all rent due on premises where Collateral is located, and maintain insurance on all Collateral against such hazards, in such amounts and with such companies as Secured Party may demand, all such insurance policies to be in the possession of Secured Party and to contain a Lender's Loss Payable Clause naming Secured Party in a manner satisfactory to Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon, and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtors' name all proofs of loss, drafts, checks and any other documents necessary to accomplish such collections, and any persons or entities making payments to Secured Party under the terms of this Paragraph are hereby relieved absolutely from any obligation to see to the application of any sums so paid.

8. Debtor shall be in default hereunder if Debtor fails to perform any of the liabilities imposed hereby or any other obligation required by the various instruments or papers evidencing or securing this loan, or if the full balance of the loan becomes immediately payable under the terms of such instruments, either automatically or by declaration of the Secured Party. In the event of any default, Secured Party may, in its own discretion, cure such default and, if it does so, any expenditures made for such purpose shall be added to the principal of the Note.

9. In the event of default, Debtor shall assemble and make available all Collateral at any place designated by Secured Party. Debtor acknowledges being advised of a constitutional right to a court notice and hearing to determine whether, upon default, there is probable cause to sustain the validity of the Secured Party's claim and whether the Secured Party is entitled to possession of the Collateral and being so advised, Debtor hereby voluntarily gives up, waives and surrenders any right to a notice and hearing to determine whether there is probable cause to sustain the validity of Secured Party's claim. Any notices required pursuant to any state or local law shall be deemed reasonable if mailed by Secured Party to the persons entitled thereto at their last known addresses at least ten days prior to disposition of the Collateral, and, in reference to a private sale, need state only that Secured Party intends to negotiate such a sale. Disposition of Collateral shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the community where the Collateral is located or by a private sale for a sum equal to or in excess of the liquidation value of the Collateral as determined by Secured Party.

10. All rights conferred on Secured Party hereby are in addition to those granted to it by any state or local law or any other law. Failure or repeated failure to enforce any rights hereunder shall not constitute an estoppel or waiver of Secured Party's rights to exercise such rights accruing prior or subsequent thereto. Secured Party shall not be liable for any loss to Collateral in its possession,

nor shall such loss diminish the debt due, even if the loss is caused or contributed to by Secured Party's negligence.

11. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

(a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

(c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

In witness whereof, the undersigned has executed this Security Agreement as of **November 30, 2020**.

**DEBTOR:**

MACC ENTERPRISES, LLC, an Ohio limited liability company

By: [signature]
Name: M. Shawn Bower
Title: Member

[redacted]

Frank LaRose
Ohio Secretary of State

| | |
|---|---|
| FS Number: | OH00246744294 |
| Date Filed: | 25 September 2020 17:04:30 |

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

| | |
|---|---|
| **NAME OF CONTACT AT FILER:** | Melissa Froelich |
| **PHONE NUMBER:** | 704-338-5345 |
| **EMAIL CONTACT AT FILER:** | mfroelich@nexsenpruet.com |
| **SEND ACKNOWLEDGEMENT TO:** | Melissa Froelich<br>1230 Main Street, Suite 700<br>Columbia<br>SOUTH CAROLINA<br>29201<br>United States |

## DEBTOR INFORMATION

**ORGANIZATION'S NAME:** MACC ENTERPRISES, LLC

**MAILING ADDRESS:** 1351 Western Avenue

**CITY:** Chillicothe **STATE:** OHIO **POSTAL CODE:** 45601 **COUNTRY:** United States

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME:** Dogwood State Bank

**MAILING ADDRESS:** 10130 Mallard Creek Rd., Bldg 2, Suite 232

**CITY:** Charlotte **STATE:** NORTH CAROLINA **POSTAL CODE:** 28262 **COUNTRY:** United States

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

All of the Debtor's rights, title and interest now existing or hereafter acquired in all accounts and inventory and all replacements, proceeds and products thereof and further including all amounts payable under any policies of insurance with respect thereto and proceeds thereof.

Express Loan

## FILING TYPE

**EXHIBIT G**

Transmitting Utility: No

Public Finance: No

Manufactured Home: No

Agriculture Lien: No

Non-Ucc Filling: No

## ALTERNATIVE DESIGNATION

Lessee/Lessor: No

Consignee/Consignor: No

Seller/Buyer: No

Bailee/Bailor: No

Licensee/Licensor: No

**Frank LaRose**
*Ohio Secretary of State*

| | |
|---|---|
| File No: | SR1408267 |
| FS Number: | OH00246744294 |
| Date Filed: | 09 April 2025<br>11:54:56 |

# UCC FINANCING STATEMENT AMENDMENT

**FOR FILING OFFICE USE ONLY**

| | |
|---|---|
| **NAME OF CONTACT AT FILER:** | CSC B2B User 2 |
| **PHONE NUMBER:** | 1-800-858-5294 |
| **EMAIL CONTACT AT FILER:** | SPRFiling@cscglobal.com |
| **SEND ACKNOWLEDGEMENT TO:** | Corporation Service Company<br>801 Adlai Stevenson Drive<br>Springfield<br>IL<br>62703 |

## CONTINUATION

**INITIAL FINANCING STATEMENT FILE NUMBER:**

OH00246744294

**CONTINUATION Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.**

## NAME OF THE PARTY AUTHORIZING THIS AMENDMENT

Authorized By Named Secured Party

**Name** Dogwood State Bank

## PACKET NUMBER

309431005

Frank LaRose
Ohio Secretary of State

| | |
|---|---|
| FS Number: | OH00246744305 |
| Date Filed: | 25 September 2020 17:06:19 |

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

**NAME OF CONTACT AT FILER:** Melissa Froelich

**PHONE NUMBER:** 704-338-5345

**EMAIL CONTACT AT FILER:** mfroelich@nexsenpruet.com

**SEND ACKNOWLEDGEMENT TO:** Melissa Froelich
1230 Main Street, Suite 700
Columbia
SOUTH CAROLINA
29201
United States

## DEBTOR INFORMATION

**ORGANIZATION'S NAME:** MACC ENTERPRISES, LLC

**MAILING ADDRESS:** 1351 Western Avenue

**CITY:** Chillicothe **STATE:** OHIO **POSTAL CODE:** 45601 **COUNTRY:** United States

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME:** Dogwood State Bank

**MAILING ADDRESS:** 10130 Mallard Creek Rd., Bldg 2, Suite 232

**CITY:** Charlotte **STATE:** NORTH CAROLINA **POSTAL CODE:** 28262 **COUNTRY:** United States

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

All of the Debtor's rights, title and interest now existing or hereafter acquired in all assets, including but not limited to, accounts, inventory, furniture, fixtures and equipment, general intangibles, instruments, documents and chattel paper and all replacements, proceeds and products thereof and further including all amounts payable under any policies of insurance with respect thereto and proceeds thereof.

Term Loan

## FILING TYPE

Transmitting Utility: No

Public Finance: No

Manufactured Home: No

Agriculture Lien: No

Non-Ucc Filling: No

## ALTERNATIVE DESIGNATION

Lessee/Lessor: No

Consignee/Consignor: No

Seller/Buyer: No

Bailee/Bailor: No

Licensee/Licensor: No

| | |
|---|---|
| File No: | SR1408251 |
| FS Number: | OH00246744305 |
| Date Filed: | 09 April 2025 11:45:54 |

# UCC FINANCING STATEMENT AMENDMENT

**FOR FILING OFFICE USE ONLY**

| | |
|---|---|
| **NAME OF CONTACT AT FILER:** | CSC B2B User 2 |
| **PHONE NUMBER:** | 1-800-858-5294 |
| **EMAIL CONTACT AT FILER:** | SPRFiling@cscglobal.com |
| **SEND ACKNOWLEDGEMENT TO:** | Corporation Service Company<br>801 Adlai Stevenson Drive<br>Springfield<br>IL<br>62703 |

## CONTINUATION

**INITIAL FINANCING STATEMENT FILE NUMBER:**

OH00246744305

**CONTINUATION Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.**

## NAME OF THE PARTY AUTHORIZING THIS AMENDMENT

Authorized By Named Secured Party

**Name** Dogwood State Bank

## PACKET NUMBER

309430277

Frank LaRose
Ohio Secretary of State

| | |
|---|---|
| FS Number: | OH00292689515 |
| Date Filed: | 01 September 2025 16:04:02 |

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

**NAME OF CONTACT AT FILER:** INES SOLER

**PHONE NUMBER:** 787-232-0033

**EMAIL CONTACT AT FILER:** victor.negron@bca247.com

**SEND ACKNOWLEDGEMENT TO:** BCA Capital Partners LLC
Street 1 Lot 8 ste 401
Guaynabo
PR
00968
Puerto Rico

## DEBTOR INFORMATION

**ORGANIZATION'S NAME:** MACC ENTERPRISES LLC

**MAILING ADDRESS:** 1351 WESTERN AVE

**CITY:** CHILICOTHE **STATE:** OHIO **POSTAL CODE:** 45601 **COUNTRY:** United States

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME:** BCA CAPITAL PARTNERS LLC

**MAILING ADDRESS:** 100 OCEANSIDE DRIVE

**CITY:** NASHVILLE **STATE:** TENNESSEE **POSTAL CODE:** 37204 **COUNTRY:** United States

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

Secured Party has purchased certain Future Receipts from Debtor. Future Receipts include all payments made by cash, check, Automated Clearing House or other electronic transfer, credit card, debit card, bank card, charge card or other form of monetary payment in the ordinary course of Seller's business.
Notice: Pursuant to the agreement between Debtor and Secured Party, Debtor is prohibited from obtaining any financing that impairs the value of the Future Receipts or Secured Party's right to collect the same.
In the event that any entity is granted a security interest in the Future Receipts contrary to the above, the Secured Party affirms a claim to any proceeds thereof received by such entity.

**Collateral is:** Held in Trust

**EXHIBIT H**

## FILING TYPE

Transmitting Utility: No

Public Finance: Yes

Manufactured Home: No

Agriculture Lien: No

Non-Ucc Filling: No

## ALTERNATIVE DESIGNATION

Lessee/Lessor: No

Consignee/Consignor: No

Seller/Buyer: Yes

Bailee/Bailor: No

Licensee/Licensor: No

Frank LaRose
Ohio Secretary of State

| | |
|---|---|
| FS Number: | OH00292743076 |
| Date Filed: | 03 September 2025 17:35:35 |

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

| | |
|---|---|
| **NAME OF CONTACT AT FILER:** | CSC B2B User 2 |
| **PHONE NUMBER:** | 1-800-858-5294 |
| **EMAIL CONTACT AT FILER:** | SPRFiling@cscglobal.com |
| **SEND ACKNOWLEDGEMENT TO:** | Corporation Service Company<br>801 Adlai Stevenson Drive<br>Springfield<br>IL<br>62703 |

## DEBTOR INFORMATION

**ORGANIZATION'S NAME:** MACC ENTERPRISES, LLC

**MAILING ADDRESS:** 1351 WESTERN AVE

**CITY:** CHILLICOTHE **STATE:** OH **POSTAL CODE:** 45601 **COUNTRY:** USA

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME:** Corporation Service Company, as Representative

**MAILING ADDRESS:** P.O. Box 2576 uccsprep@cscinfo.com

**CITY:** Springfield **STATE:** IL **POSTAL CODE:** 62708 **COUNTRY:** USA

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

Secured Party has purchased certain "Future Receipts" from Debtor. "Future Receipts" means all payments made to Debtor by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card or other form of monetary payment in the ordinary course of Debtor's business.
Debtor and Secured Party intend that the sale of Future Receipts is a sale and not an assignment for security.
Notice: Pursuant to the agreement between Debtor and Secured Party, Debtor is prohibited from obtaining any financing that impairs the value of the Future Receipts or Secured Party's right to collect same

## FILING TYPE

Public Finance: No

Transmitting Utility: No

Manufactured Home: No

Non-Ucc Filling: No

Agriculture Lien: No

## ALTERNATIVE DESIGNATION

Licensee/Licensor: No

Consignee/Consignor: No

Bailee/Bailor: No

Seller/Buyer: No

## PACKET NUMBER

322145665

Frank LaRose
Ohio Secretary of State

FS Number: OH00294880018
Date Filed: 05 December 2025 10:52:42

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

**NAME OF CONTACT AT FILER:** CSC B2B User 2
**PHONE NUMBER:** 1-800-858-5294
**EMAIL CONTACT AT FILER:** SPRFiling@cscglobal.com
**SEND ACKNOWLEDGEMENT TO:** Corporation Service Company
801 Adlai Stevenson Drive
Springfield
IL
62703

## DEBTOR INFORMATION

**ORGANIZATION'S NAME:** MACC Enterprises, LLC
**MAILING ADDRESS:** 1351 Western Avenue
**CITY:** Chillicothe **STATE:** OH **POSTAL CODE:** 45601 **COUNTRY:** USA

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME:** Corporation Service Company, as Representative
**MAILING ADDRESS:** PO Box 2576
**CITY:** Springfield **STATE:** IL **POSTAL CODE:** 62708 **COUNTRY:** USA

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

All of the following property, except to the extent any of the following property is considered to be real property, that is now or hereafter at any time used in connection with (without regard to the duration of the period of such use), or now or at any time relates to or arises as a result of, the operation of the Debtor's business:
(i) all of the Debtor's inventory, including all goods, merchandise, raw materials, supplies and other tangible personal property, now owned or hereafter acquired, and all documents now and at any times covering or representing any of said property;(ii) all of Debtor's accounts, accounts receivable, contract receivables, contract rights, notes, drafts, acceptances, instruments, chattel paper, payment intangibles and general intangibles, and all guarantees and suretyship agreements relating thereto and all security for payment thereof, now and hereafter existing or arising;and (iii) all of Debtor's equipment, including all furniture, furnishings, machinery, fixtures, storage shelves and other goods used in the conduct of Debtor's business, including, but not limited to, all motor vehicles and rolling stock, now

owned or hereafter acquired;together with (a) all increases, parts, fittings, accessories, equipment, special tools and accessions now or hereafter attached thereto or used in connection therewith, and any and all replacements of all or any part thereof;(b) any profits now or hereafter acquired from or through any of the foregoing;(c) any products now or hereafter acquired from or through any of the foregoing;(c) any products now or hereafter manufactured, processed, assembled or commingled from any of the foregoing;and (d) any and all proceeds received should any of the foregoing be sold, exchanged, collected or otherwise disposed of.
All of the above described collateral falls within the scope of the Uniform Commercial Code.
Notice is hereby provided that pursuant to a contract between Debtor and Secured Party, Debtor has agreed that the collateral described herein ("Covered Collateral") will not, after the date of the filing of this UCC Financing Statement, be sold, transferred or further encumbered while this UCC Financing Statement is in effect. The sale, transfer or further encumbrance of the Covered Collateral shall constitute a breach by the Debtor of the terms of the contract between Debtor and Secured Party. Any third party that further encumbers the Covered Collateral in whole or in part, purchases the Covered Collateral in whole or in part, or otherwise takes receipt of any rights to the Covered Collateral in whole or in part and who has or should have knowledge of this Financing Statement or the restrictions in the contract between
Debtor and Secured Party shall be tortiously interfering with the contract between Debtor and Secured Party and shall be liable to Secured Party for any damages suffered as a result of the interference. THE SECURED PARTY NAMED IN THIS RECORD IS ACTING IN A REPRESENTATIVE CAPACITY FOR PURPOSES OF FORWARDING NOTICES & INQUIRIES REGARDING THIS RECORD. FOR MORE INFORMATION, PLEASE CONTACT THE SECURED PARTY AT THE ADDRESS LISTED ABOVE OR AT UCCSPREP@CSCINFO.COM

## FILING TYPE

Public Finance: No

Transmitting Utility: No

Manufactured Home: No

Non-Ucc Filling: No

Agriculture Lien: No

## ALTERNATIVE DESIGNATION

Licensee/Licensor: No

Consignee/Consignor: No

Bailee/Bailor: No

Seller/Buyer: No

## PACKET NUMBER

331230732